IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GEOFFREY DAVIS,

        Petitioner,

                                        Civil Action:. 2:08-CV-1099
                                                   2:09-CV-1125
        v.                                         2:10-CV-48
                                          Judge Marbley
                                          Magistrate Judge King

ED VOORHIES, Warden,

        Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings these consolidated actions for a writ of habeas

corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the consolidated

petitions, respondent's returns of writ, petitioner's traverses, and the exhibits of the parties.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that these actions be

**DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Fourth District Court of Appeals summarized the facts and procedural

history of this case as follows:

> Appellant and Denise Fought met in November 2001 and soon
> began living together. Later they moved into appellant's
> mother's rented mobile home.
>
> On the morning of August 26, 2004, Fought phoned her
> mother, Evelyn Schupp. Fought asked Schupp to come get her
> because appellant "beat the hell out of [her]" the night before.
> Schupp and another daughter, Maureen Van Skiver, picked up
> Fought, stopped at a post office to put a hold on Fought's mail,

and took Fought to St. Joseph's Hospital in Parkersburg, West Virginia. Fought remained hospitalized for four days.

The Washington County Grand Jury returned an indictment charging appellant with felonious assault and abduction. Appellant pled not guilty and the court conducted a jury trial in May and June 2005.

At trial, Fought testified that she and appellant lit a fire to burn cabinets that had been removed from the mobile home because of insect infestation. As they watched the cabinets burn, they began to argue. Appellant returned to the mobile home and Fought gave him a few minutes to "cool down" before she went inside. Appellant, after exchanging words about what to watch on the television, "backhanded" Fought. When Fought went to the bathroom to spit out blood, appellant followed and continued to strike her. She attempted to leave, but appellant grabbed her hair and dragged her through the dirt back to the mobile home. Appellant also kicked Fought in the ribs and tore off her shirt and bra. Appellant shoved Fought back inside where the beating continued. The next morning, Fought awoke and called her mother.FN1

FN1. Although appellant's mother leased the mobile home, she was not present at the time in question. She had recent cataract surgery and stayed with a friend.

Evelyn Schupp testified that when she saw Fought, she had "bruises all over her," both eyes were "black and almost swollen shut" and that Fought walked "bent over, holding her side, because she couldn't hardly breathe." Both Maureen Van Skiver and Carolyn Powell, a friend who saw Fought at the post office, corroborated the injuries.FN2 John Koch, M.D., a general surgeon at St. Joseph's hospital, testified that Fought's broken rib punctured her lung and caused a "pneumothorax." If left untreated, the condition is potentially fatal.

FN2. The prosecution introduced into evidence photographs that showed Fought's bruises and other injuries. Dylan Evans, the Deputy Sheriff who took the photographs while Fought was in the hospital, testified that she actually looked worse in

person than depicted in the photographs.

The defense, however, offered a much different version of the events. Nicole Seitz, appellant's niece, testified that she drove from Akron to see her uncle that night. Shortly before she arrived at the mobile home, she passed a motorcycle in a ditch. As she pulled into her uncle's driveway, the motorcycle and two passengers "flew right past her." The motorcycle then stopped and Fought got off and screamed at appellant "[y]ou tried to kill me on the bike." She then motioned at Seitz and accused appellant of "f-ing" her because he sure was "not doing me" (referring to herself). When appellant informed Fought that Seitz is his niece, Fought screamed "I might be a drunk, but I am not stupid." Seitz testified that Fought then stumbled and fell three or four times as she made her way toward the mobile home. On rebuttal, Fought testified that she had never seen Nicole Seitz before the trial.

The jury found appellant guilty on both counts and the trial court ordered a pre-sentence investigation. Appellant failed to appear at the July 15, 2005 sentencing hearing, and approximately two months later, he was apprehended. A new sentencing hearing was conducted on September 9, 2005. The trial court sentenced appellant to serve seven years in prison on the felonious assault charge and four years on the abduction charge, with the sentences to be served concurrently.

*State v. Davis,* 2006 WL 1883120 (Ohio App. 4th Dist. June 16, 2006). Petitioner filed a timely

appeal. He asserted the following assignments of error:

FIRST ASSIGNMENT OF ERROR:

THE TRIAL COURT ERRED BY SENTENCING MR. DAVIS TO A NON-MINIMUM PRISON TERM BASED ON FACTS NOT FOUND BY THE JURY OR ADMITTED BY MR. DAVIS.

SECOND ASSIGNMENT OF ERROR:

IN VIOLATION OF DUE PROCESS, THE GUILTY VERDICT ON THE FELONIOUS ASSAULT CHARGE WAS ENTERED

AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*See id.*  On June 16, 2006, the appellate court sustained petitioner's first assignment of error, but otherwise affirmed the trial court's judgment, and remanded the case to the trial court for re-sentencing.  *Id.*

> At [petitioner's] re-sentencing hearing the trial court re-imposed the same two sentences. Once again, the court ordered them to be served concurrently.

*See State v. Davis*, 2007 WL 841606 (Ohio App. 4th Dist. March 19, 2007).  Petitioner again filed a timely appeal, in which he asserted that

> subsequent to *Foster* any sentence greater than the statutory minimum sentence violates his constitutional rights under the ex post facto clause of Article I, Section 10, of the United States Constitution and the Due Process Clause of the Fourteenth Amendment.

*See id.*  On March 19, 2007, the appellate court affirmed the trial court's judgment.  *Id.* Through counsel, petitioner filed a motion for delayed appeal, which motion the Ohio Supreme Court granted.  *State v. Davis*, 114 Ohio St.3d 1477 (2007).  On September 10, 2008, the Ohio Supreme Court dismissed petitioner's appeal.  Exhibit 14 to Return of Writ.

On February 22, 2008, petitioner filed a delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  *Exhibit 15 to Return of Writ.*  On May 7, 2008, the appellate court dismissed his Rule 26(B) application as untimely.  *Exhibit 16 to Return of Writ.*  On September 10, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal as not involving any substantial constitutional question.  *Exhibit 19 to Return of Writ.*

On November 19, 2008, petitioner filed, *pro se*, the first petition for a writ of habeas

4

corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. The remedy Ohio Supreme Court dictated in *State v. Foster*... violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

> 2. Reopening of an appeal is warranted when a defendant is denied effective assistance of appellate counsel as guaranteed by the United States and Ohio Constitution when counsel fails to assert issues, including violations of *Brady v. Maryland*... prosecutorial misconduct and a claim of ineffective assistance of counsel.

> 3. Application for reopening appeal from judgment and conviction based on claim of ineffective assistance of counsel should be granted when applicant shows good cause for failing to file within ninety days after journalization of the Court of Appeals decision affirming the conviction as required by App. R. 26(B).

On December 15, 2009, petitioner filed the second federal habeas corpus petition, in which he additionally asserts as follows:

> 4. Sentence contrary to law and violates equal protection and in conflict with *State v. Bolton*.

On January 14, 2010, petitioner filed the third federal habeas corpus petition, in which he additionally asserts:

> 5. The lower courts have denied me my rights to the JTC entitled to [sic].

These habeas corpus petitions have been consolidated for consideration. It is the position of the respondent that petitioner's claims are procedurally defaulted or without merit.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam); Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and

6

that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

In claim two, petitioner asserts the ineffective assistance of appellate counsel. Petitioner attempted to present this claim in his delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B); however, the state appellate court refused to address the merits of his claim as untimely:

> On February 28, 2008, appellant filed this application to reopen his appeal. See App. R. 26(B). We need not reach the merits of appellant's arguments, however, because App. R. 26(B)(1) requires that such applications be filed ninety (90) days after journalization of the appellate judgment, unless an applicant can show good cause for a delayed filing. Our judgment in Davis II was journalized on March 19, 2007. Appellant's application is well outside that ninety day limit (nearly one year). Appellant argues that he can establish "good cause" for the delay because his appellate counsel was ill and neither he, nor another attorney in the Public Defender's Office to whom he wrote, answered his correspondence. We are not persuaded this assertion establishes sufficient "good cause" for a delayed filing.
>
> Even if we accept as true, for purposes of argument, every factual allegation contained in appellant's application, the last correspondence he claims to have forwarded to Ohio Public Defender was dated July 30, 2007. Appellant waited over seven months after that date to file the present application. He offers no explanation for those additional seven months, and, thus, he has not established "good cause" for filing his application out of rule. The Ohio Supreme Court has indicated

7

> that a failure to comply with the ninety day time limit is, by
> itself, sufficient reason to deny an App.R. 26(B) application....

*Exhibit 16 to Return of Writ.*

The appellate court alternatively dismissed petitioner's claim on the merits. *See id.* However, that alternative ruling does not forgive the waiver or otherwise revive the claim for purposes of habeas corpus review. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding"); *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir.2003) (where state court's dismissal of claim on merits constitutes an alternative holding, federal habeas court will consider the claim procedurally defaulted); *Kenney v. Haviland*, No. 1:04 CV 2194, 2006 WL 2792171, at *6 n. 8 (N.D.Ohio Sep.26, 2006) ("The mere existence of the clear statement rule confirms that an alternative holding on the merits cannot save a claim where the court clearly and expressly enforces a state procedural bar"). Further, the United States Court of Appeals for the Sixth Circuit has held that Ohio's Rule 26(B) constitutes an adequate and independent state ground for denying federal habeas corpus review. *Monzo v. Edwards*, 281 F.3d 568, 577-78 (6th Cir.2002)(By 1996, it was well established in the Ohio courts that claims of ineffective assistance of appellate counsel must be raised in the court of appeals under Ohio's Rule 26(B)). This Court therefore likewise concludes that petitioner has procedurally defaulted claim two.

Petitioner may still secure review of this claim on the merits if he establishes cause for his failure to follow state procedural rules, as well as actual prejudice. *See Maupin,*

*supra.* As cause for his procedural default, petitioner asserts the ineffective assistance of counsel. Petitioner states that, on August 15, 2006, he wrote appellate counsel, Attorney Jasiunas, inquiring about a Rule 26(B) application. He heard no response until May 31, 2007, when Attorney Prendergast advised him that Attorney Jasiunas was "on leave" and that she "was prepared to file a delayed appeal to the Ohio Supreme Court [and] also" a Rule 26(B) application. *See Exhibit 15 to Return of Writ.* On July 26, 2007, Attorney Prendergast wrote petitioner that the Ohio Supreme Court had granted his motion for delayed appeal, but she did not mention the Rule 26(B) application. On July 30, 2007, petitioner wrote counsel inquiring about his Rule 26(B) application. He apparently received no response. *See id.*

It is true that the constitutionally ineffective assistance of counsel may constitute cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), citing *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986). However, the ineffective assistance of counsel cannot constitute cause if there was no constitutional right to effective counsel in the proceeding in question. "The right to counsel extends to the first appeal of right and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Lopez v. Wilson,* 426 F.3d 339, 352 (6th Cir.2005). Thus, any failure by petitioner's appellate counsel in connection with the Rule 26(b) application does not constitute cause for petitioner's procedural default. *See Smith v. Ohio Department of Rehabilitation and Correction,* 331 F.Supp.2d 605, 618 (N.D.Ohio 2004) (counsel's failure to provide timely notification of appellate court's decision rejecting his claims did not constitute cause for procedural default in failing to file a timely appeal to

the Ohio Supreme Court) (citations omitted); *Barkley v. Konteh,* 240 F.Supp.2d 708, 713-14

(N.D. Ohio 2002) (same); *Shabazz v. Ohio,* 149 F.3d 1184, unpublished, 1998 WL 384559 (6th

Cir. June 18, 1998) (no cause for procedural default where attorney waited over one year

to file the notice of appeal) (citations omitted).[1] Further, as noted by the state appellate

court, petitioner waited over seven months after his last correspondence with the public

defender's office to file his Rule 26(B) application. For all the foregoing reasons, this Court

concludes that petitioner has failed to establish cause for his procedural default.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether

this is "an extraordinary case, where a constitutional violation has probably resulted in the

conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also*

*Sawyer v. Whitley*, 505 U.S. 333. Petitioner alleges that he is the victim of a manifest

miscarriage of justice, and that he is actually innocent of the charges against him. *See*

---

[1] In *Paris v. Turner,* 187 F.3d 637 (unpublished), 1999 WL 357815 (6th Cir. May 26, 1999), the Sixth Circuit held that petitioner established cause for his four-year delay in filing an application for reopening of the appeal pursuant to Ohio Appellate Rule 26(B) where appellate counsel waited four months before advising petitioner that his appeal had been denied, and the public defender then waited three years before filing a delayed appeal on petitioner's behalf. However, at the time that decision was rendered, a Rule 26(B) motion was arguably perceived as part of the direct appeal as of right. Indeed, the Court of Appeals subsequently concluded that it was. *White v. Schotten,* 201 F.3d 743 (6th Cir. 2000). However, the Sixth Circuit now takes the position that Ohio's Rule 26(B) proceeding is not part of the direct appeal process. *Lopez v. Wilson,* 426 F.3d 339 (6th Cir. 2005) (*en banc*) (overruling *White v. Schotten* ). Thus, this Court is not bound by the unpublished decision in *Paris v. Turner.*

*Petition; Traverse.* Petitioner states that he did not cause Fought's injuries, but that she fabricated the charges against him. In support of this claim, petitioner states that Fought had a prior criminal history, including convictions for DUI, possession of marijuana and public intoxication, and he alleges that she was intoxicated and under the influence of drugs at the time in question. *See Exhibits to Traverse.* Petitioner has also attached the statement of Nicole Seitz, who testified as a defense witness at trial, as well as his own affidavit, in which he avers that Fought's injuries were caused when he lost control of his motorcycle after a large German shepherd jumped on his motorcycle and Fought, a passenger, fell. *See Exhibits to Traverse.* Petitioner also refers to the affidavit of Robert Whytsell, who was no called as a defense witness, *See Exhibit 15 to Return of Writ*, but whose affidavit was submitted in support of petitioner's Rule 26(B) application. According to that affidavit, on the night before the date in question, Whytsell watched Fought arrive at petitioner's home "falling down drunk and yelling." She threatened to call the police and tell them that petitioner had beaten her. On the night at issue, Whytsell saw that petitioner's motorcycle had fallen on Fought. Her black eyes were caused by the motorcycle accident. Later that evening, Whytsell was present when Fought became angry with petitioner because he would not purchase crack cocaine. She fell into a pile of concrete blocks and railroad ties. She said that she would blame petitioner in order to get more social security money. *See id.*[2]

---

[2] The record reflects that defense counsel listed Whytsell as a defense witness; however, petitioner complains that defense counsel refused to call Whytsell as a defense witness at trial because he "is a known drunk." *See Exhibit 15 to Return of Writ.*

The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones,* 395 F.3d 577, 589 (6th Cir. 2005)(footnote omitted). After review of the record, the Court does not deem this to be such a case.

Claim two has been waived.

## CLAIMS ONE, FOUR and FIVE

In claims one and four, petitioner contends that application of *State v. Foster*, 109 Ohio St.3d 1 (2006), violated the Ex Post Facto Clause and Due Process. The state appellate court rejected this claim as follows:

12

Appellant argues in his assignment of error that subsequent to *Foster* any sentence greater than the statutory minimum sentence violates his constitutional rights under the ex post facto clause of Article I, Section 10, of the United States Constitution and the Due Process Clause of the Fourteenth Amendment. We disagree. FN1

FN1. The re-sentencing hearing transcript reveals that appellant raised this argument and, thus, properly preserved the issue for appellate review.

We have previously considered on several occasions the ex post facto argument appellant raises herein and we have rejected it each time. See e.g. *State v. Henry,* Pickaway App. No. 06CA8, 2006-Ohio-6942, at ¶¶ 11-12; *State v. Grimes,* Washington App. No. 04CA17, 2006-Ohio-6360, at ¶¶ 8-11. Various other Ohio appellate courts have rejected it as well. See e.g. *State v. Lowe,* Franklin App. No. 06AP-673, 2007-Ohio-504, at ¶ 9; *State v. Shield,* Shelby App. No. 9-06-16, 2007-Ohio-462, at ¶¶ 21-23; *State v. Hildreth,* Lorain App. No. 06CA8879, 2006-Ohio-5058, at ¶¶ 10.

We find nothing in appellant's brief to prompt us to reconsider our conclusion and we continue to adhere to *Henry* and *Grimes.* For the reasons stated in those cases, we do not believe that the trial court was constitutionally required to impose a statutory minimum sentence on appellant following *Foster.*

Accordingly, based upon the foregoing reasons we hereby overrule appellant's assignment of error and affirm the trial court's judgment.

*State v. Davis, supra*, 2007 WL 841606.

The factual findings of the state appellate court are presumed to be correct. 28

U.S.C. §2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the

> judgment of a State court, a determination of a factual issue
> made by a State court shall be presumed to be correct. The
> applicant shall have the burden of rebutting the presumption
> of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was

contrary to or an unreasonable application of clearly established federal law, or based on

an unreasonable determination of the facts in light of the evidence that was presented. 28

U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the
> adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

The United States District Court for the Western District of Michigan has summarized this

standard as follows:

> [A] decision of the state court is "contrary to" such clearly
> established federal law "if the state court arrives at a
> conclusion opposite to that reached by this Court on a question
> of law or if the state court decides a case differently than this
> Court has on a set of materially indistinguishable facts." *Id*. at
> 413. A state court decision will be deemed an "unreasonable
> application" of clearly established federal law "if the state
> court identifies the correct governing legal principle from this
> Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case." *Id*. A federal habeas court may not

find a state court's adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Further, the federal habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.*

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006), citing *Williams v. Taylor*, 529 U.S. 362 (2000).  Petitioner has failed to meet this standard here.

In *Hooks v. Sheets*, – F.3d –, 2010 WL 1655578 (6th Cir. April 27, 2010), the United States Court of Appeals for the Sixth Circuit rejected this same argument, at least as it applies to the imposition of consecutive terms of incarceration:

The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) " 'aggravates a crime, or makes it greater than it was, when committed,' " (3) " 'changes the punishment' " to inflict greater punishment than the law provided when the crime was committed, or (4) " 'alters the legal rules of evidence' " so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee,* 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)). The Ex Post Facto Clause, however, provides by its terms that it is applicable only to acts of the Legislature, and " 'does not of its own force apply to the Judicial Branch of government.' " *Id.* (quoting *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). Nevertheless, the "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." *Id.* Consequently, the principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause. *See id.* at 457. Because these principles are viewed through the lens of due process in the judicial context, the constitutionality of judicial action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the

specific prescriptions of the Ex Post Facto Clause. *Id.* at 458-59.

A state's statutory scheme does not violate the Sixth Amendment simply because it constrains the ability of courts to impose consecutive sentences to situations in which the court has found specific facts. *Oregon v. Ice,* --- U.S. ----, ---- - ----, 129 S.Ct. 711, 714-15, 172 L.Ed.2d 517 (2009). Instead, a state may allow courts unfettered discretion to impose consecutive sentences or it may limit that authority without violating the Sixth Amendment. *Id.* At the time Hooks committed his crimes, Ohio permitted the court to impose consecutive rather than concurrent sentences if it found particular facts, *see* ORC § 2929.14(E)(4), and explained its "reasons for imposing the consecutive sentences," ORC § 2929.19(B)(2)(c). The Ohio Supreme Court nevertheless determined that these statutory provisions violated *Blakely* because they allowed the imposition of longer sentences-consecutive sentences-based upon judicial factfinding. *Foster,* 845 N.E.2d at 491.

Regardless of the court's determination in *Foster,* the maximum sentence to which Hooks was constitutionally subject contemplated consecutive sentences. Hooks would have the court calculate his maximum sentence as being imposed concurrently based solely on the facts found by a jury at the time of sentencing, because he argues that this calculation is mandated by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, *Apprendi* does not limit the calculation of Hooks's potential sentence to concurrent sentences when the judicial fact-finding here is allowed under *Ice* . Thus, Hooks was initially and constitutionally subject to consecutive sentences according to the "guided discretion" of the court. *See Foster,* 845 N.E.2d at 495. Moreover, Hooks was always aware of the potential for consecutive sentences. On re-sentencing post- *Foster* he remained subject to consecutive sentences within the discretion of the court. Since Hooks was *always* subject to consecutive rather than concurrent sentences in the discretion of the trial court, his re-sentencing under *Foster* did not raise ex post facto or due process concerns. We need not reach the broader question of whether re-sentencing under *Foster* ever violates the Due Process or Ex Post Facto Clauses because *Foster's* application in Hooks's case does not

16

do so.

*Id.* Further, petitioner's argument that application of *Foster* violates the Ex Post Facto

Clause or Due Process has been repeatedly rejected by state and federal courts.

> Petitioner's claim that the retroactive application of the *Foster*
> remedy to correct constitutional infirmities in Ohio's
> sentencing statutes constitutes a violation of the Constitution's
> Ex Post Facto and Due Process Clauses has been thoroughly
> discussed and uniformly rejected by this Court and other
> federal district and state courts in Ohio. *See, e.g., Hooks v. Sheets*,
> No. 1:07cv520, 2008 WL 4533693, at *3-5, *13-19 (S.D. Ohio Oct.
> 3, 2008) (Beckwith, J.; Hogan, M.J.) (unpublished) (and cases
> cited therein); *see also Wright v. Warden*, Pickaway Corr. Inst.,
> --- F.Supp.2d ----, No. 1:07cv1022, 2009 WL 1850170, at *1,
> *23-25 (S.D. Ohio June 25, 2009) (Barrett, J.; Hogan, M.J.) (to be
> published) (and cases cited and quoted therein); *Kelley v.
> Brunsman*, --- F.Supp.2d ----, No. 1:08cv71, 2009 WL 1617774, at
> *5-6, *17-18 (S.D. Ohio June 9, 2009) (Spiegel, J.; Hogan, M.J.)
> (to be published); *Smith v. Brunsman*, --- F.Supp.2d ----, No.
> 1:07cv878, 2009 WL 530113, at *1, *4-8 (S.D. Ohio Feb. 27, 2009)
> (Barrett, J.; Black, M.J.) (to be published) (noting that "both the
> federal district courts and Ohio courts have rejected ex post
> facto challenges to the Foster decision").

*Dickens v. Brunsman*, 2009 WL 3199066 (S.D. Ohio September 29, 2009)(footnote omitted).

 *See also Trewartha v. Brunsman*, 2009 WL 614963 (S.D. Ohio March 5, 2009); *Smith v. Wilson*,

2008 WL 4758696 (N.D. Ohio October 29, 2008) (same). This Court agrees with the

reasoning of those courts.

Petitioner faced the same penalty ranges in sentences for his convictions prior to,

and after *Foster*. In fact, the trial court in this case imposed the same sentence on both

occasions.

Petitioner also asserts in claim four that his sentence violates *State v. Bolton*, 143 Ohio

17

St.3d 185 (2001), and in claim five that the trial court denied him jail time credit to which he was entitled. These claims present issues regarding the alleged violation of state law, and therefore fail to warrant federal habeas corpus relief.

A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir.1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir.1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988). Such are not the circumstances here. *See Aaron-El v. director, Ohio Department of Rehabilitation and Correction*, 2008 WL 69711 (S.D. Ohio March 13, 2008)(challenge to state court's issuance of jail time credits fails to present issue appropriate for federal habeas corpus relief)(citations omitted); *Gora v. Romanowski*, 2005 WL 3465725 (E.D. Michigan December 16, 2005)(same), citing *Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *Travis v. Lockhart,* 925 F.2d 1095, 1097 (8th Cir. 1991); *Hoover v. Snyder,* 904 F.Supp. 232, 234 (D. Del.1995); *Buchanan v. DeFew,* 14 F.3d. 600 (unpublished), 1993 WL 524006 (6th Cir. December 16, 1993)(state court's issuance of jail time credits is

18

issue of state law not appropriate for federal habeas corpus relief)(citations omitted).

Claims one, four and five are without merit.

### CLAIM THREE

In claim three, petitioner appears to assert that the state appellate court improperly denied his delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). This claim also fails to present an issue appropriate for federal habeas corpus review.

> [A]lleged errors involving a state court's interpretation of its own procedural rules are not cognizable in federal habeas corpus review.

*Smith v. Ohio, Department of Rehabilitation and Correction,* 331 F.Supp.2d 605, 613 (N.D. Ohio 2004), citing *Simpson v. Jones*, 238 F.3d 399, 406-407 (6th Cir.2000).

Claim three is therefore without merit.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that these actions be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge

with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


 July 1, 2010                                    *s/ Norah McCann King*
                                                 Norah McCann King
                                                 United States Magistrate Judge

20